# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-0301V

| | |
|---|---|
| LAURIANNE RUSSELL,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: July 26, 2023<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset;  Location of<br>Injury; Influenza (Flu) Vaccine;<br>Ruling on Entitlement; Table Injury;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Ronalda Elnetta Kosh, U.S. Department of Justice, Washington, DC, for Respondent.*

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM</u>**[1]

On March 16, 2020, Laurianne Russel filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by the influenza ("flu") vaccine she received on December 4, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, although I find that the onset of Petitioner's pain occurred within 48-hours of vaccination, the Table SIRVA claim must be dismissed because the evidentiary record does not support the conclusion that Petitioner's pain and limited range of motion were limited to the vaccination shoulder. This leaves a possibly-meritorious causation-in-fact claim to be adjudicated, however.

## I.     Relevant Procedural History

Soon after filing her petition, on March 16, 2020, Ms. Russell filed eight medical record exhibits and a Statement of Completion. ECF No. 6-7. On August 31, 2020, she filed two additional exhibits. ECF No. 13.

On October 12, 2021, Respondent filed his Rule 4(c) Report contesting Petitioner's entitlement to compensation. ECF No. 25. Respondent argued that Petitioner had failed to satisfy two requirements necessary to prove that she suffered a Table SIRVA injury. Rule 4(c) Report at 7-8. Specifically, Respondent maintained that "while the medical records indicate that Petitioner's pan began after her flu vaccination, they do not support a finding that the onset occurred within 48 hours of vaccination." *Id.* at 7. Further, Respondent argues that Petitioner's symptoms were not limited to her vaccinated shoulder. *Id.* at 7-8.

Following the filing of Respondent's Rule 4(c) report, I issued an order instructing the parties to engage in settlement negotiations. *See* ECF No. 26. After a short period of negotiation, the parties reached an impasse. ECF No. 29. As a result, on July 25, 2022, I ordered Petitioner to show cause why her Table SIRVA claim should not be dismissed. ECF No. 30. Petitioner filed her response to the order on October 3, 2022 ("Mot."). Respondent filed his response on December 1, 2022 ("Resp."). ECF No. 33. Petitioner filed a reply on December 7, 2022 ("Repl."). ECF 34. The issue is now ripe for resolution.

## II.    Relevant Factual History

Petitioner received the flu vaccine in her left arm at a Walmart Pharmacy in Valparaiso, Indiana on December 4, 2017. Ex.1 at 1. Petitioner recalled that the "next day, [her] arm was so sore, [she] struggled to play [her] pool game for [her] league." Ex. 7 at ¶2.

Fifteen days after her vaccination, Petitioner presented to nurse practitioner ("NP") Stephany Sipe at her primary care physician's ("PCP") office for a follow up on her high blood pressure and to refill her prescriptions. Ex. 3 at 20-21. The record of that visit does

not include any mention of Ms. Russell's vaccination or shoulder pain. *Id*. However, Ms. Russell's physical exam includes an examination of her neck. *Id*. at 20. She was assessed with muscle spasms and reduced range of motion in the left side of her neck. *Id*. She was prescribed Norco and cyclobenzaprine. *Id*. Petitioner recalled that she mentioned her shoulder pain and "the knot in [her] left arm where [she] received the shot" during the visit and was told to rub her arm and to use a warm compress. Ex. 7 at ¶2.

On January 26, 2018 (53 days after her vaccination), Petitioner presented to urgent care with complaints of "pain in the left upper arm and also pain to the neck." Ex. 5 at 1. Petitioner reported that she "had the flu shot at Wal-Mart on 12/7/17[sic]" and that she had had pain "since that time." *Id*. Petitioner reported that she had seen her PCP who "told her that the shot must have hit a nerve pattern and to apply warm compresses to the area." *Id*. On exam, Petitioner had a small nodule in her left upper arm and tenderness to palpation. *Id*. at 2. She was prescribed prednisone. *Id*.

On April 30, 2018, Petitioner presented to the emergency room with complaints of neck pain and was seen by Dr. Daniel Smith, an infectious disease specialist. Ex. 4 at 6-16; Ex. 6 at 1-3. Petitioner reported that approximately six months ago, she had a flu shot and developed a nodule and that "there seemed to be a pulling from that area to the left side of her neck." Ex. 6 at 2. An x-ray of her cervical spine revealed degenerative changes and disc disease. Ex. 4 at 16. Dr. Smith believed she suffered from muscle spasms in her neck and prescribed gabapentin and Flexeril. Ex. 6 at 2.

Petitioner returned to her PCP on May 15, 2018. Ex. 3 at 22-23. She reported that she had had pain in her left deltoid since her December 4, 2017, flu shot. *Id*. at 22. She described her pain as "going up to the shoulder going up into the neck and also shooting pain that goes towards her shoulder into her upper arm." *Id*. On exam, Petitioner had tenderness to palpation and was "unable to move her head in terms of rotation or abduction to the left without pain." *Id*. The was a "slightly indurated area of the left deltoid," but no impingement of the left shoulder. *Id.* Although the doctor acknowledged the possibility that Petitioner "may have developed equivalent of regional sympathetic dystrophy type of syndrome," he diagnosed cervical radiculitis based upon his examination findings. *Id*. He prescribed magnesium chloride cream, increased Petitioner's gabapentin, and referred her to physical therapy. *Id*. at 22-23.

Petitioner returned to her PCP on May 25, 2018, again seeing NP Sipe, with complaints of uncontrolled pain in her neck. Ex. 3 at 24. She stated that "she had a flu shot in her left deltoid and the next day she felt soreness that set into her neck and has been suffering from a sore neck for past 6 months." *Id*. Petitioner believed the flu shot caused her neck pain. *Id*. During the exam, Petitioner complained of "shock like pains to

3

the left side of neck." *Id.* Petitioner was assessed with cervical radiculitis, prescribed Norco, and encouraged to continue physical therapy. *Id.* at 25. An MRI was ordered. *Id.* Petitioner stated that her doctor told her "to hold off on the MRI" due to the expense until after she had tried physical therapy. Ex. 7 at 2.

On May 17, 2018, Petitioner presented for a physical therapy initial evaluation. Ex. 2 at 4. She reported that she had received a flu vaccine the previous December, and had been having issues with left shoulder pain and left-sided neck pain. *Id.* Petitioner "showed limited AROM of the cervical spine with left radiating sign/symptom." *Id.* at 5. Her therapy goals focused on improving neck range of motion and reducing neck pain. *Id.* Petitioner attended eight additional physical therapy treatments through June 13, 2018. *Id.* at 13. At the time of discharge, Petitioner reported that she no longer had pain in her neck and shoulder. *Id.* She had met all of her goals and was discharged. *Id.* at 18-20. Petitioner did not receive any additional treatment for her neck or shoulder.

### III. Findings of Fact

#### A. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). The Federal Circuit has said that

> Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

*Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized, however, that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Thus, medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare not only the medical records, testimony, but also all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational). Indeed, as the Federal Circuit recently stated, although later oral testimony that conflicts with medical records is less reliable, it is appropriate for a special master to credit a petitioner's lay testimony where is does not conflict with contemporaneous records. *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1382-84 (Fed. Cir. 2021).

5

### B. Analysis

1. *Onset*

Respondent questions whether evidence establishes that Petitioner's first symptom or manifestation of onset after vaccine administration occurred within 48 hours as set forth in the Vaccine Injury Table and the second QAI for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B.; 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); Resp. at 9. Although there is evidence that Petitioner's pain began *after* her vaccination, there is not sufficient specificity to place onset within the required 48-hour period. *Id.* at 10. Respondent's argument seems to be that the only way Petitioner can show she experienced symptoms within 48 hours of vaccination is with contemporaneous records that specifically reference the date of onset within the required timeframe.

However, the very terms of Vaccine Act allow that a "special master … may find the first symptom … of an injury … occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom … *was not recorded*" in contemporaneous medical records. 42 U.S.C. § 300aa-13(b)(2) (emphasis added). Ultimately, resolving how to weigh the evidence on such matters falls within the purview of the special masters. 42 U.S.C. § 300aa-13.

While it is true that most of the filed records do not precisely establish that Petitioner's pain began in the first 48 hours after her vaccination, there is one medical record that does record Petitioner's statement that her pain began the day *after* her vaccination. *See* Ex. 3 at 24. Petitioner also provided an affidavit in which she stated that the "next day, [her] arm was so sore, [she] struggled to play [her] pool game for [her] league." Ex. 7 at ¶2. Further, in multiple post-vaccination medical records, Petitioner consistently attributed her injury to the flu vaccine she received. *See* Ex. 2 at 4; Ex. 3 at 22, 24; Ex. 5 at 1; Ex. 6 at 1. While these entries were based upon information provided by Petitioner, they still should be afforded substantial weight as they were provided while Petitioner sought medical care for the alleged vaccine injury.[3] Finally, there are no records in which Petitioner placed the onset of her pain outside of 48 hours after her vaccination.

Admittedly, the medical record from December 19, 2017 (15 days after Petitioner's vaccination) is problematic, since it does not mention Petitioner's vaccination or shoulder pain. *See.* Ex. 3 at 20. Although the visit was intended to address prescription refills and

---

[3] The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.

6

high blood pressure with NP Sipe, Petitioner also had an examination of her neck and was prescribed medication for muscle spasms. *Id.* at 20-21. However, Petitioner recalled mentioning her shoulder pain, along with the "knot in her left arm," from her flu shot at that visit and being advised to use warm compresses. Ex. 7 at ¶2. And a careful reading of the records as a whole provide evidence that Petitioner did mention her pain at that appointment, as she recalled. Thus, when Petitioner sought treatment on January 26, 2018 for her shoulder pain, she reported that she had already been seen by her PCP. Ex. 4 at 1. She again reported having already seen her PCP when she saw Dr. Smith on April 30, 2018. Ex. 6 at 1. Finally, when Petitioner saw her PCP on May 15, 2018, she saw Dr. Bharat Pithadia, who recorded that she had already seen "Stephanie" and "Dr. Smith" for her pain. Ex. 5 at 22. Although it is possible that Petitioner did not mention her shoulder pain, the records are consistent with each other and with Petitioner's testimony. These records, recorded at the time Petitioner was seeking treatment, suggest that Petitioner more likely than not had reported her pain at the December 19, 2017 appointment, despite the silence of the record.

Overall, Petitioner's own assertions are sufficiently corroborated by the medical record to accept her contention of onset. At worst, the conflicting medical records make this a "close-call," but in such cases Program case law counsels deciding the matter in a petitioner's favor. *Roberts v. Sec'y of Health & Human Servs*., No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). Accordingly, I find there is preponderant evidence to establish that the onset of Petitioner's pain occurred within 48 hours of vaccination.

2. *Injury Localized to Vaccinated Arm*

Respondent further argues that Petitioner's symptoms were not limited to the shoulder in which she received the vaccination. Resp. at 14-15. This argument finds substantially more support on the filed medical record.

Those records contain repeated complaints by Petitioner of neck pain - at least concurrently if not predating her shoulder pain. At her first medical appointment after her vaccination, on December 19, 2017, Petitioner was diagnosed with muscle spasms and limited range of motion to the left in her neck and prescribed Norco and cyclobenzaprine. Ex. 3 at 20. Although there was no shoulder pain documented in the record, as discussed above, it is consistent with the evidence that Petitioner mentioned her pain at this visit. Nonetheless, Petitioner certainly reported neck symptoms that led to the diagnosis and treatment of muscle spasms. Thereafter, Petitioner consistently reported neck pain, both with and without shoulder pain, to her treating providers and was consistently treated for neck pain throughout her treatment course. Petitioner's PCP diagnosed cervical radiculitis – a neck condition – at her May 15, 2018 visit. Ex. 3 at 22. At the same appointment, he

7

noted that there was no impingement of the left shoulder. *Id*. Petitioner reported ongoing neck pain, which she believed was caused by her flu shot at the next visit ten days later. *Id*. at 24. Finally, almost the entirety of Petitioner's physical therapy treatment was focused on her neck, rather than her shoulder. *See* Ex. 2.

Although Petitioner argues that "any radiating pain to her neck was more likely than not related to, and a sequela of [her] initial SIRVA injury," the record suggests that Petitioner had neck pain as soon as, or even possibly before, her shoulder pain. Mot. at 8. Petitioner cites *Stokes v. Sec'y of Health & Human Servs.,* No. 19-0752V, 2021 WL 6550888 (Fed. Cl. Spec. Mstr. Dec. 17, 2021) to support her argument that concurrent pain in the shoulder and other areas can be attributed to a SIRVA injury. Mot. at 7-8. That case is distinguishable, however. That claimant had suffered severe shoulder pain with some radiation to the forearm and some possibly neurological symptoms which developed later in her treatment course. *Stokes*, 2021 WL at *4. Petitioner, on the other hand, complained *primarily* of neck pain, rather than shoulder pain, throughout her treatment, was diagnosed with cervical radiculitis, and received treatment (via physical therapy) primarily to her neck. Further, Ms. Russell complained of neck pain from the beginning of her treatment, rather than of shoulder pain that developed into radiating pain outside the shoulder later.

Because the medical records reveal that Petitioner's pain and limited range of motion were not limited to her right shoulder, she cannot predominantly establish the third QAI for a Table SIRVA. Rather, and as Petitioner suggests, the claim most proceed as a causation-in-fact claim, requiring expert input to determine the relationship between Petitioner's neck and shoulder pain and her vaccination. Mot. at 8.

## Conclusion

Accordingly, because Petitioner has not preponderantly established that her pain and limited range of motion were limited to her vaccinated shoulder, she cannot proceed in this action with a Table SIRVA claim. Petitioner's Table SIRVA claim is dismissed, for the reasons set forth above and the case will be reassigned to a Special Master outside of the Special Processing Unit ("SPU").

**IT IS SO ORDERED.**

*s/Brian H. Corcoran*
Brian H. Corcoran
Chief Special Master
